REQUESTED BY: Senator Harold F. Sieck Nebraska State Legislature State Capitol Box 24 Lincoln, NE 68509
Dear Senator Sieck:
You have requested our opinion regarding two questions relating to the powers of the Nebraska Investment Finance Authority.
Initially, you ask whether the Authority is statutorily permitted to issue bonds to enable a corporation to obtain a lower interest rate where no new facilities will be constructed and no new employees will be hired as a result of the bond issue. Specifically, you state the purpose of such an issuance would be to substitute bonds authorized by the Authority for existing industrial development bonds which have already been utilized by the entity.
The statutory provisions pertaining to the issuance of industrial development bonds by counties or municipalities are contained in Neb.Rev.Stat. §§ 18-1614 to 18-1623 (Reissue 1983). Section 18-1616 provides industrial development bonds issued by counties and municipalities constitute limited obligations, and allows the governing body of a county or municipality to sell bonds at public or private sales at such time they deem to be most advantageous.
The powers granted the Nebraska Investment Finance Authority are enumerated in Neb.Rev.Stat. § 58-239 (Reissue 1984). Subsection (18) of § 58-239 provides the Authority has the power:
 To issue bonds for the purpose of paying the cost of financing any project or projects, and to secure the payment of such bonds as provided in the Nebraska Investment Finance Authority Act; . . . . (Emphasis added).
The definition of `project' relating to the industrial or commercial arm of the Authority is found in § 58-219, which provides, in pertinent part:
Project shall mean one or more of the following:
. . .
 (3) Any land, building, or other improvement, any real or personal property, or any equipment, and any undivided or other interest in any of the foregoing, whether or not in existence, suitable or used for or in connection with any of the following revenue-producing enterprises or two or more such enterprises engaged or to be engaged in:
 (a) In all areas of the state, manufacturing or industrial enterprises including assembling, fabricating, mixing, processing, warehousing, distributing, or transporting any products of agriculture, forestry, mining, industry, or manufacturing; pollution control facilities; facilities incident to the development of industrial sites including land costs and the costs of site improvements thereon, such as drainage, water, storm, and sanitary sewers, grading, streets, and other facilities and structures incidental to the use of such sites for manufacturing or industrial enterprises;
 (b) In all areas of the state, commercial or service enterprises if (i) such facilities constitute new construction or rehabilitation including hotels or motels, sports and recreation facilities available for use by members of the general public either as participants or spectators, and convention or trade show facilities and (ii) such facilities do not or will not derive a significant portion of their gross receipts from retail sales or utilize a significant portion of their total area for retail sales;
 (c) In blighted areas of the state, commercial, service, and business enterprises if such facilities constitute new construction, acquisition, or rehabilitation, including, but not limited to, those enterprises specified in subdivision (3)(b) of this section, office buildings, and retail businesses; and
 (d) In all areas of the state, any land, building, or other improvement and all real or personal property, including furniture and equipment, and any undivided or other interest in any such property, whether or not in existence, suitable or used for or in connection with any hospital, nursing home, and any facilities related and subordinate thereto; and
 (4) Any land, building, or other improvement, any real or personal property, or any equipment, and any undivided or other interest in any of the foregoing, whether or not in existence, used by any business as an office building, but only if (a) the principal long-term occupant or occupants thereof initially employ at least fifty people, (b) the office building will be used by the principal long-term occupant or occupants as a national, regional, or divisional office, (c) the principal long-term occupant or occupants are engaged in a multistate operation, and (d) the authority makes the findings specified in subdivision (1) of section 58-251. . . . (Emphasis added).
We believe the language of § 58-239(18), providing the Authority with the power `to issue bonds for the purpose of paying the cost of financing any project,' clearly indicates a legislative intent to limit the Authority's power to issue bonds to use only for the financing of projects within the Act's coverage. Subsections (3) and (4) of § 58-219 specifically define what projects come within the scope of the Act's provisions for the financing of industrial or commercial enterprises and activities. Section 58-219 restricts the definition of such projects to `any land, building, or other improvement, any real or personal property, or any equipment, and any undivided or other interest' in any industrial or business activity authorized to be financed under the Act. This language indicates the Authority's power to finance projects is limited to the construction or acquisition by an entity of real or personal property. We believe the issuance of refinancing bonds would not constitute a project within the intent and purposes of the Act. It is therefore our opinion that the definitions in § 58-219 would not cover the issuance of Authority bonds to replace existing industrial development bonds issued under §§ 18-1614 to18-1623.
Your second question concerns whether the Board of the Nebraska Investment Finance Authority is required to approve a bond issue if independent bond counsel states the bond issue meets legal requirements, or whether the Board can deny the issuance of bonds if it finds such issuance would not be in the general public interest or would not be within the general public purposes of the legislation creating the Authority.
Neb.Rev.Stat. § 58-234 (Reissue 1984) empowers the Authority to employ various personnel, including legal counsel. The powers of the Authority are further enumerated in § 58-239, which provides, in pertinent part:
 The authority is hereby granted all powers necessary or appropriate to carry out and effectuate its public and corporate purposes, including but not limited to, the following: . . .
 (7) To employ architects, engineers, attorneys, inspectors, accountants, building contractors, financial experts, and such other advisors, consultants, and agents as may be necessary in its judgment, and to fix their compensation; . . .
 (9) To borrow money and issue bonds as provided by the Nebraska Investment Finance Authority Act; . . . .
The provisions relating to the sale of bonds by the Authority are contained in Neb.Rev.Stat. §§ 58-252 to 58-262
(Reissue 1984). Clearly, no statutory provision exists which requires the Board to approve a bond issue merely because the bond counsel hired by the Authority renders its opinion that an issue meets all legal requirements. Neb.Rev.Stat. § 58-251 (Reissue 1984) requires the Authority to make certain specific findings relating to the public purposes to be served prior to financing a development project under the Act. Section 58-251 provides:
 Prior to providing financing for a development project as defined by subdivision (3) of section 58-219, the authority shall make specific findings relating to the public purposes to be effectuated thereby, including but not limited to (1) with respect to a project as defined in subdivision (3)(a), (3)(b), or (3)(c) of section 58-219, the project's effect on the economic base, the tax base, tax revenue, and employment opportunities, and (2) with respect to a project as defined in subdivision (3)(d) of section 58-219, the project's effect on the provision, including the continued provision, of health care and related services.
Based on the foregoing, it is our opinion that the Board of the Nebraska Investment Finance Authority is not required to approve a bond issue which its independent bond counsel has stated meets all legal requirements. The Board has discretion to deny the issuance of development bonds if it finds their issuance would not be in the general public interest or would not effectuate the public purposes outlined in § 58-251.
Very truly yours, PAUL L. DOUGLAS Attorney General L. Jay Bartel Assistant Attorney General